IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PIC GROUP, INC.                                                                     PLAINTIFF

vs.                                                 CIVIL ACTION NO. 1:09-cv-662-KS-MTP

LANDCOAST INSULATION, INC. and
ZURICH AMERICAN INSURANCE CO.                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Partial Summary Judgment [Doc. # 156] (May 18, 2010), filed on behalf of Defendant LandCoast Insulation, Inc. The court, having reviewed the motion, the responses, the pleadings and exhibits on file and being otherwise fully advised in the premises, finds as follows:

## I. FACTS

PIC Group, Inc. ("PIC") contracted LandCoast Insulation, Inc. ("LCI") to install scaffolding at the Mississippi Power Plant Daniel in Escatawpa, Mississippi. The scaffolding collapsed on November 4, 2008, injuring six LCI employees and killing one. PIC seeks a declaratory judgment under 28 U.S.C. § 2201 that LCI is required to defend and indemnify PIC under the terms of their contract. PIC also raises negligence, breach of contract, and bad faith claims against LCI and seeks compensatory and punitive damages. The only issue presently before the Court is a narrow one: whether LCI's contractual obligation to indemnify PIC is unenforceable because the indemnification clause is void under the applicable state law.

PIC was hired as general contractor by Mississippi Power Company ("MPC") to perform maintenance and repair on its boiler at Plant Daniel. In turn, PIC contracted with LCI on

1

September 23, 2008, as a sub-contractor to "furnish all labor, supervision, tools, equipment, materials, supplies, and facilities and to perform such services, tasks or activities (collectively referred to as the 'Work') as requested from time to time by the issuance of a . . . 'Purchase Order.'" Am. Compl., Ex. 2 [Doc. # 93-3]. The only Purchase Order issued was executed by PIC's purchasing manager on September 23, 2008 and defined the scope of work requested for Plant Daniel. *Id.*, Ex. 3 [Doc. # 93-4]. It is this Subcontractor Agreement entered September 23, 2008, between PIC and LCI that is at issue in this motion, specifically the provisions related to choice of governing law, indemnification, insurance, and severability, which are:

> 16. **Indemnification**. Subcontractor agrees to indemnify, save harmless and, at PIC's sole option, defend PIC, Customer [MPC], their respective parents, subsidiaries, affiliates, subcontractors (other than [LCI]) and each of their respective directors, officers, employees, agents, representative, successors and assigns from and against all claims, demands, damages, costs, losses, liabilities, causes of action, suits, fines, penalties and expenses (including reasonable attorneys' fees through final appeal), whether at law, in equity, or administrative in nature, in any manner arising out of, resulting from, caused by or in connection with: (i) this Agreement or any Purchase Order, (ii) Subcontractor's [LCI's] breach of this Agreement or any Purchase Order, (iii) personal injury or death, (iv) property damage, or (v) violation of federal, state or local law, regulation, rule or ordinance pertaining to the Work.
>
> 17. **Insurance.** During the term of this Agreement:
>
> (a) **Workers Compensation**. Subcontractor shall provide and maintain in full force and effect workers compensation insurance in each jurisdiction in which the Work is to be provided with limits required of an employer by law, and employer's liability insurance with minimum limits of $1,000,000 except as specified in the Prime Contract.
>
> (b) **Comprehensive General Liability**. Subcontractor shall provide and maintain in full force and effect comprehensive general liability insurance protecting Subcontractor, PIC and Customer against liability from damages because of injuries, including death, suffered by persons other than employees of Subcontractor, damages to property and the contractual liability assumed by Subcontractor under this Agreement and any Purchase Order arising from and growing out of any products and operations of Subcontractor in connection with

2

the performance of this Agreement or any Purchase Order. Such insurance shall have limits of liability of not less than $1,000,000 per occurrence and $2,000,000 aggregate on an occurrence form basis.

. . .

(d) **Insurance Requirements**. All insurance required under this Section 17 shall include waivers of subrogation in favor of PIC, Customer, and their respective parents, subsidiaries, affiliates, subcontractors (other than [LCI]) and each of their respective directors, officers, employees, agents, representative, successors and assigns and shall be primary with respect to any other similar insurance maintained by PIC and Customer. Such insurance, except workers compensation, shall name PIC and Customer [MPC] as additional insured.

. . .

22. **Governing Law**. This agreement is made under and shall be construed in accordance with the laws of the State of Georgia, U.S.A., without regard to its conflicts of law provisions.

. . .

24. **Severability.** If any part(s) of this Agreement is deemed void or invalid by a court of competent jurisdiction, such part shall not affect the validity of the balance of the terms of this Agreement which shall remain in full force and effect.

Am. Compl., Ex. 2 [Doc. # 93-3]. As a part of their amended Complaint, PIC seeks a declaration that under the terms of the Subcontractor Agreement, LCI must indemnify and defend PIC. Specifically, PIC asks the Court to declare that:

> LandCoast has the duty and obligation, arising out of, resulting from, caused by or in connection with the November 4, 2008, Scaffolding Collapse accident at Plant Daniel, to indemnify, save harmless and defend PIC and its customer, MPC, from and against any and all claims, demands, damages, costs, losses, liabilities, causes of action, suits, fines, penalties, expenses, reasonable attorneys' fees through final appeal, including without limitation any and all pre-and-post litigation defense efforts including, but not limited to, engagement of experts and other third parties to catalog and perform non-destructive testing on the scaffolding material, and engagement of counsel to represent PIC and MPC in the investigation of the cause of the accident, to interviewing witnesses, and in preparation for the defense of lawsuits by the estate of the deceased employee, the allegedly injured employees and other parties.

3

In its motion for partial summary judgment, LCI argues that whether or not the indemnity provision is enforceable is a pure legal question, and that under state law, the indemnity provision is void and wholly unenforceable. LCI asks the Court to grant its motion and dismiss PCI's claim for a declaratory judgment on this issue.

## II. STANDARD OF REVIEW

Summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir. 2004). Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007). If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston*

*Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on his pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

## III. APPLICATION

### A. Choice of Law

PIC argues that LCI admitted in its answer that Georgia law applies to the contract, and that they should be judicially estopped from taking the contrary position that public policy demands the application of Mississippi law. Paragraph 11 of PIC's amended complaint stated:

11

The PIC-LandCoast Subcontract is governed by Georgia law and provides:

> 22. **Governing Law**. This agreement is made under and shall be construed in accordance with the laws of the State of Georgia, U.S.A., without regard to its conflict of law provisions.

*See* Ex. 2 at pg. 7, ¶ 22.

Am. Compl. ¶ 11 [Doc. # 93]. In answer, LCI stated, "Admitted." In Paragraph 96 of its amended complaint PIC stated, "The PIC-LandCoast Subcontract is governed by Georgia law" to which LCI answered, "Admitted. LandCoast reserves the right to supplement and/or amend its Answer to Paragraph 97 of the Amended Complaint." Am. Answer ¶ 96 [Doc. # 100]. In

Paragraph 97 PIC stated, "The PIC-LandCoast Subcontract is not governed by Mississippi law" to which LCI answered, "Upon information and belief, the allegations of Paragraph 97 of the Amended Complaint admitted. LandCoast reserves the right to supplement and/or amend its Answer to Paragraph 97 of the Amended Complaint." *Id.* ¶ 97.

Admissions serve to narrow the issues in the trial, and under the common law doctrine of judicial estoppel, "a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). While the answer to Paragraph 11 was an unequivocal admission, the other two answers addressing the paragraphs that are more singularly focused on which states' laws apply are less so. While the admission that Georgia law applies may weigh in favor of PIC's position, the Court need not decide whether the admissions are conclusive and bar the Court's consideration of the relevant choice of law rules; the end result is the same when Mississippi's choice of law rules are applied.

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990) (citing *FMC Finance Corp., v. Murphree*, 632 F.2d 413, 418 (5th Cir. 1980)). In the absence of law directly on point, Mississippi courts have approvingly cited the Restatement (Second) of Conflicts of Laws (1971). *Id.* (citing *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1032-34 (Miss. 1985)). Section 187(2) of the Restatement states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971). The first exception to the application of the state's law selected by contract is a lax one. "[A] foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge" will not provide a sufficient basis for choosing the law, but the selection will be deemed reasonable if, for example, the state chosen is "where one of the parties is domiciled or has his principal place of business." *Id.* §187 cmt. f. Here, the basis for choosing Georgia law is reasonable: PIC is a Georgia corporation with its principal place of business in Marietta, Georgia.

Nor does the Court find that application of Georgia law would be contrary to the fundamental Mississippi policy that a contractor may not require a subcontractor to indemnify and defend the contractor's sole negligence. Both Mississippi and Georgia prohibit indemnification in this situation. The states obviously have different laws, and, even if the relevant statutes were identical, each state would have its own case law interpreting the bounds of the laws.[1] The Restatement makes clear, however, that "[t]he forum will not refrain from

---

[1]Mississippi statute provides:

With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith,

7

applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." *Id.* § 187 cmt. g. Tellingly, the Mississippi and Georgia statutes and the public policies behind them are actually very similar. In its own memorandum brief, LCI admits: "This [Georgia] public policy is codified in a very similar anti-indemnification statute as the one in Mississippi, O.C.G.A. § 13-8-2(b)." Def.'s Mem. Br. at 13 [Doc. # 157]. In sum, the Georgia anti-indemnity law is in line

---

> every covenant, promise and/or agreement contained therein to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.
>
> This section does not apply to construction bonds or insurance contracts or agreements.

MISS. CODE ANN. § 31-5-41 (2008). Georgia's comparable statute is O.C.G.A. § 13-8-2. It provides:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee, including its, his, or her officers, agents, or employees, against liability or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee, or its, his, or her officers, agents, or employees, is against public policy and void and unenforceable. This subsection shall not affect any obligation under workers' compensation or coverage or insurance specifically relating to workers' compensation, nor shall this subsection apply to any requirement that one party to the contract purchase a project specific insurance policy, including an owner's or contractor's protective insurance, builder's risk insurance, installation coverage, project management protective liability insurance, an owner controlled insurance policy, or a contractor controlled insurance policy.

O.C.G.A. § 13-8-2(b) (2007).

8

with, and not contrary to, Mississippi's policy prohibiting a contractor from being indemnified for his own negligence in a construction contract. Finding that there is no real conflict between the laws of the two states, the Court will uphold the application of Georgia law as chosen by the Subcontractor Agreement, at least for the claim at issue in the present motion.

### B. The Enforceability of the PIC-LandCoast Subcontract Indemnity Provision

The Court agrees that the issue whether the indemnification is void is a question of law and is therefore ripe despite the fact that discovery is not complete. PIC argues that the Court should make a factual determination regarding whether PIC could have been solely negligent in this situation before deciding if PIC is seeking indemnity for its own negligence. It cites OSHA violations against LCI to show that LCI was at least in part negligent and therefore, PIC is not seeking indemnification for solely its own negligence. Generally, contracts against public policy are deemed "illegal" and are *void ab initio*. *See* 1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 1:20 (4th ed. 1990 & Supp. 2004). Specifically, many courts have determined that an indemnity provision is void based on its plain language and the scope of the indemnification attempted by the parties with absolutely no regard for the factual determination of who was liable for the injury or damage at issue and to what extent. *See, e.g., National Candy Wholesalers, Inc. v. Chipurnoi*, 180 Ga. App. 664, 666, 350 S.E.2d 303, 306 (1986) (finding exculpatory clause covering "any claim" void and unenforceable without regard to actual fault); *McAbee Constr. Co. v. Ga. Kraft Co.*, 178 Ga. App. 496, 496, 343 S.E.2d 513 (construing indemnity and insurance clauses in construction contract without determining fault). PIC cites no cases to the contrary. The issue is whether the

indemnity provision violates public policy by its plain language, not whether the application of the provision under these circumstances violates public policy.

### 1. The Scope and Validity of the Indemnity Clause

Contracts of indemnification are to be strictly construed against the indemnitee. *Foster v. Nix*, 173 Ga. App. 720, 723, 327 S.E.2d 833 (1985). However, "[t]he courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." *RSN Props., Inc. v. Engineering Consulting Servs., Ltd.*, 686 S.E.2d 853, 854 (Ga. App. 2009) (quoting *Emory Univ. v. Porubiansky*, 282 S.E.2d 903 (Ga. 1981). With that said, the Georgia courts have recently held indemnity clauses unenforceable when they use broad language such as "any claims" that could necessarily include cases involving the sole negligence of the indemnitee and have refused to read them only to require indemnification for losses due to combined negligence or that or solely the indemnitor. *See, e.g. Frazer v. City of Albany*, 245 Ga. 399, 401-02, 265 S.E.2d 581 (1980) (entire provision void and unenforceable because "all claims" language could include indemnity for indemnitee's sole negligence); *Nat. Candy Wholesalers v. Chipurrnoi, Inc.*, 180 Ga. App. 664, 350 S.E.2d 303 (1986) (same). This more recent approach was contrary to earlier cases from the Georgia Court of Appeals, but has been followed by that court in more recent cases.² *See World Championship Wrestling Inc. v.*

---

²The United States District Court in the Northern District of Georgia has criticized this approach to construction of indemnity clauses. *See Federal Paper Board Co., Inc. v. Harbert-Yeargin, Inc.*, 53 F.Supp.2d 1361, 1372 n.17 (N.D.Ga. 1999). The Court in this case noted:

> The likely winning line invalidates parties' efforts to agree to an arms-length indemnification provision, merely because the provision could be interpreted broadly to create indemnification beyond what public policy recognizes, even though the provision also triggers an indemnity obligation consistent with public policy. Clearly, it is simple enough for a court to strike or refuse to enforce the

*City of Macon*, 229 Ga.App. 248, 493 S.E.2d 629 (1997). Although the Georgia courts have voided clauses that were broadly written in their entirety, some cases indicate that separate sections in an indemnity provision can be severed. In one case, for instance the Georgia Court of Appeals held that a provision is not "nullified by any public policy failures of the second" when "they deal with separate, distinct and cumulative obligations." *Hartline-Thomas Inc. v. Arthur Pew Constr. Co.*, 151 Ga.App. 598, 600-601, 260 S.E.2d 744, 745 (Ga. App. 1979); *see also Camp Concrete Prods. v. Cent. of Ga. Ry Co.*, 134 Ga. App. 537, 215 S.E.2d 299 (1975) (voiding one provision of three that dealt with indemnity for construction aspects but finding the other two not dealing with construction severable and otherwise enforceable).

LCI would have the court read the indemnity clause as one purporting to cover "all claims" which would necessarily include claims arising from the alleged sole negligence of PIC, rendering the indemnity clause entirely void and unenforceable under the law. On the other hand, PIC urges that the broad "all claims" language is limited by the five numbered circumstances that follow: ". . . arising out of, resulting from, caused by or in connection with: (i) this Agreement or any Purchase Order, (ii) Subcontractor's [LCI's] breach of this Agreement or any Purchase Order, (iii) personal injury or death, (iv) property damage, or (v) violation of

---

> former provision. Refusal to do so results in a refusal to enforce that part of the parties' agreement which clearly inhabits a safe public policy zone. Moreover, such a determination, particularly when applied to relatively unsophisticated parties operating without the advice of sound counsel, carries a "gotcha," gamesman-like quality that is at odds with a common-sense approach to legal interpretation that shall be the goal of a national legal system.

*Id.* This view is in line with the position of PIC which would have the Court refuse to invalidate it based on the facts from which the Court could infer that LCI was at least in part, negligent. However, the court is bound by Georgia case law on the subject.

11

federal, state or local law, regulation, rule or ordinance pertaining to the Work." The Court agrees with PIC. First, the Subcontractor Agreement specifically contains a severability clause. Second, the clause creates "separate, distinct and cumulative obligations which apply in five (5) particular circumstances." Third, considering each circumstance separately is consistent with Georgia's policy to uphold arms-length negotiations of two sophisticated parties and to avoid declaring a provision void as against public policy without the use of extreme caution. The Court, then, will consider each indemnity circumstance separately.

Subsection (ii) of the indemnification clause is not contrary to public policy as codified in O.C.G.A. § 13-8-2(b) and is therefore enforceable. Looking at this separate obligation independently, LCI is required to " indemnify, save harmless and, at PIC's sole option, defend PIC" against all claims arising out of "(ii) Sub-contractor's breach of this Agreement or any Purchase Order." As PIC argued in its brief, it is impossible for PIC to be solely responsible for LCI's breach, so this clause by its plain language cannot be interpreted as one party requiring another to indemnify it for its own negligence, and it does not offend public policy. PIC argues that subsection (v) could also only cover LCI's negligence, and not the sole negligence of PIC. In its briefing, PIC took the liberty to quote the provision to require indemnification for all claims arising from **LCI's** violation of laws and regulations, which is not a limitation that appears in the express terms of the contract. It is theoretically possible for PIC to be in "violation of federal, state or local law, regulation, rule or ordinance pertaining to the Work." Unlike the separate obligation in subsection (ii), the contract does not modify the action as being that of the subcontractor only. Therefore, this subsection, along with subsections (i), (iii), and (iv), for the same reason, can be interpreted as requiring LCI to indemnify PIC for its sole

12

negligence, and would be void under O.C.G.A. § 13-8-2(b). At this point, the Court must turn to the question of whether the insurance provision, when read in conjunction with the indemnification provision, takes the indemnification clause outside the public policy concerns codified in O.C.G.A. § 13-8-2(b), by shifting the risk of loss, whether caused solely or in part by either party, to an insurance policy.

### 2. The Effect of the Insurance Clause

While § 13-8-2(b) holds that indemnity clauses shifting liability for one party's sole negligence to another party are void and unenforceable, the "subsection shall not . . . apply to any requirement that one party to the contract purchase a project specific insurance policy, including an owner's or contractor's protective insurance, builder's risk insurance, installation coverage, project management protective liability insurance, an owner controlled insurance policy, or a contractor controlled insurance policy." O.C.G.A. § 13-8-2(b). Under O.C.G.A. § 13-8-2(b), an indemnity clause does not violate public policy, if, when construed together with the insurance clause, the intent of the parties to the contract was exculpation and not indemnification. *McAbee*, 178 Ga. App. 496, 498, 343 S.E.2d 513 (1986) (citing *Tuxedo Plumbing & Heating Co., Inc. v. Lie-Nielson*, 245 Ga. 27, 28-29, 262 S.E.2d 794 (1980). In other words, an indemnity provision that would otherwise violate § 13-8-2 will be held enforceable when "the insurance clause shifts the risk of loss to the insurance company regardless of which party is at fault." *Id.*

LCI first argues that the statutory amendments in 2007 changed the law so that the shifting of liability to an insurance company only saved the indemnity clause when the contract required "project specific insurance policy." LCI argues that the insurance policy required by

13

the contract in this case was not project specific, because the policy it was required to purchase and maintain needed to cover "the performance of this Agreement or any Purchase order . . . ."

The Court finds little merit to this argument. The contract specifically covered one particular project: namely, procuring a design and installing the scaffolding at the Plant Daniel. At the time of the accident only one purchase order had been made. This purchase order was made on the same day as the Subcontractor Agreement and defined the scope of the work at Plant Daniel. There is no evidence that either party intended this Subcontractor Agreement to cover any work other than the design and installation for the scaffolding at Plant Daniel.

The more important question, then, becomes whether the insurance policy that LCI was obligated to purchase and maintain covered the liability that LCI assumed under the indemnification clause. Here, the insurance provision specifically shifts the risk to the insurance policy protecting Subcontractor, PIC and Customer against liability with one major exception– that is, damages because of injuries, including death, suffered by employees of Subcontractor. This particular subsection of the indemnity clause states that LCI will indemnify PIC for all claims arising from personal injury or death without regard to who is liable, even if PIC is 100% liable. The insurance clause requires LCI to get a policy that protects both LCI, PIC, and MPC against "liability from damages because of injuries, including death, suffered by persons ***other than employees of Subcontractor***." In other words, the indemnity clause shifts more liability to LCI than LCI is required to insure against.

On the other hand, the insurance provision requires LCI to obtain insurance covering "contractual liability assumed by Subcontractor under this Agreement and any Purchase Order" which arguably could cover the liability LCI assumes under the indemnification clause. *See*

*Federal Paper Board Co., Inc. v. Harbert-Yeargin, Inc.*, 53 F. Supp.2d 1361,1373-76 (N.D. Ga. 1999) (discussing various interpretations of "contractual liability"). Neither party addressed this limitation in the insurance clause in their briefs, but at first glance, the law in Georgia seems to require all the liability to shift to the insurer in order to escape the harsh consequences of O.C.G.A. § 13-8-2(b). The Court will allow the parties to provide additional briefing on this matter. Each party is allowed twenty (20) days to file additional briefing up to fifteen (15) pages on this limited issue. Following the submission of the parties' supplemental briefing, the Court will set a date for oral arguments as requested by PIC.

## IV. CONCLUSION

In conclusion, the Court finds that Georgia law applies to the interpretation of the contract consistent with the choice of law provision in the PIC-LCI Sub-Contractor's Agreement. Subsection (ii) of the indemnity clause does not violate Georgia public policy as codified in O.C.G.A. § 13-8-2(b) and is enforceable. Sub-sections (i), (iii), (iv), and (v) are broadly drafted and include circumstances when PIC could be solely at fault which violates Georgia public policy as codified in O.C.G.A. § 13-8-2(b). However, the insurance clause, read in conjunction with the indemnity clause seems to shift the risk to a project specific policy no matter which party is partially or solely at fault. However the insurance policy is limited in that it covers "liability from damages because of injuries, including death, suffered by persons other than employees of Subcontractor." The parties did not brief the issue whether this limitation on insurance affects the application of O.C.G.A. § 13-8-2(b) or whether the provision is enforceable because the insurance policy covers all contractual liability assumed by the parties. Since the

injured LCI employees have filed suit, *Galvan, et. al., v. Mississippi Power Company, et.al.*, USDC, S.D. Miss. No, 1:10cv00159-LG-RHW, the Court will allow the parties twenty (20) days and fifteen (15) additional pages to brief this very limited issue. Following the submission of the additional briefing, oral arguments will be set.

The Court need not address indemnity under the common law as LCI's partial motion narrowly sought relief as to the enforceability of the indemnification clause in the Subcontractor's Agreement.

IT IS THEREFORE ORDERED AND ADJUDGED that LCI's request for a declaratory judgment finding the indemnity provisions void and unenforceable is denied at this time. The Motion for Partial Summary Judgment [Doc. # 156] filed on behalf of LandCoast Insulation, Inc., is hereby **denied.**

SO ORDERED AND ADJUDGED this the 1st day of September, 2010.

>*s/Keith Starrett*
>UNITED STATES DISTRICT JUDGE