UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **PIC GROUP, INC.** | * | **Plaintiff** |
| | * | |
| **VERSUS** | * | **CAUSE NO. 1:09-cv-662-KS-MTP** |
| | * | |
| **LANDCOAST INSULATION, INC.** | * | **Defendant** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR COURT-APPOINTED COMPUTER FORENSICS EXPERT**

Plaintiff, PIC Group, Inc. ("PIC") respectfully provides this memorandum in support of its Motion for Court-Appointed Computer Forensics Expert (Doc.#256).

**GOOD FAITH CONFERRAL**

PIC and defendant LandCoast Insulation, Inc. ("LCI") conferred on this discovery motion but were unable to reach agreement. *See* Exhibit "A" hereto (Good Faith Certificate).

**BACKGROUND**

This action arises out of a November 4, 2008, scaffolding collapse accident at Plant Daniel in Escatawpa, Mississippi. Experts have stated it is the largest commercial scaffold accident in history.

The factual background of the case is further set forth in PIC's Amended Complaint (Doc.# 93); PIC's Opposition to LandCoast Insulation, Inc.'s Motion for Partial Summary Judgment (Doc.# 169); the OSHA Decision (Doc.# 169-1); the OSHA Hearing Transcript (Doc.## 169-2 and 169-3). In addition, PIC refers the Court to its Motion for Sanctions and Memorandum in Support, filed contemporaneously with this motion. PIC adopts and incorporates all arguments and statements of fact set forth in its Motion for Sanctions and Memorandum in Support. The specific facts relevant to this motion and the need for investigation by a computer forensics expert due to LCI's spoliation of electronically stored information ("ESI") are as follows.

Days after the accident, PIC notified LCI of the need to preserve ESI. *See* Exhibit "B" hereto (Correspondence from A.J. Krouse to Walter Dukes, former counsel for LCI). OSHA began its investigation of the collapse immediately, on November 4, 2008. Between 2008 and 2010, the parties participated in extensive physical evidence recovery and preservation. The extent of the efforts taken by PIC to preserve evidence were significant. *See* Exhibit "C" (November 18, 2010, Expert Evidence Processing Report of Engineering Systems, Inc. (minus voluminous exhibits attached thereto))

Following the issuance of the Case Management Order on January 13, 2010 (Doc.# 77), PIC and LCI circulated drafts and attempted to reach agreement on an ESI protocol and a protective order. A Stipulated Protective Order was agreed upon and entered (Doc.#87). However, knowing it "wiped" ESI from its servers, LCI continued delay tactics and refused to enter an Agreed ESI Order. On March 18, 2010, PIC submitted interrogatories and requests for production of documents to LCI, requesting LCI's ESI among other information. After an agreed extension, LCI responded on May 14, 2010.

On May 5, 2010, OSHA issued a sweeping decision against LCI for safety violations related to the accident. With this decision clearly establishing fault with LCI, and although LCI's discovery responses were inadequate, the parties turned efforts to compromise participating in two mediations. Nevertheless, while the primary layer of insurance (Zurich) was resolved, the excess layer (Westchester) was not.

Then, more than a year and a half after the accident, on August 16, 2010, LCI informed PIC that ESI previously located on LandCoast's corporate servers had been deleted, and the laptop of Dan Anderson, Corporate Vice President in charge of sales who was involved in the PIC-LCI contract, was stolen. *See* Doc.#193-6 at 1. On October 16, 2010, PIC filed its Motion to Compel and Motion for *In Camera* Review (collectively "Motion to Compel"), requesting the Court compel LCI to supplement its deficient discovery responses or, in the alternative, to conduct an *in camera* review of

the contested materials.  *See* Doc.#192/193.  On November 18, 2010, the Court issued an Order granting in part and denying in part PIC's Motion to Compel, while also stating that "the court does not suggest that this is necessarily the last word from the court on the issues of missing information and the inferences and consequences, if any, which may result."  *See* Doc.#236 at 7.

PIC identified major deficiencies in LCI's document preservation efforts in its Motion to Compel (Doc.#192/193) and in its Motion for Sanctions.  Craig Marks, LCI's Manager of Legal Affairs, testified that no written litigation hold notice was given to any LCI employees who worked on the Plant Daniel project.  *See* Doc.#233-1 at 95-96 (November 9, 2010, depo. of Craig W. Marks).  Marks gave a verbal notice to preserve documents only to two employees, Dan Anderson and Donnie Sullivan.  *Id*.  LCI has admitted to spoliation of ESI, and its retained "IT expert" testified LCI's server was intentionally wiped following the accident.

The deposition testimony of Andrew Mozingo, LCI's "IT expert" who purports to be certified as a "Computer Hacking Forensics Investigator," indicates LCI did not ask him to retrieve the deleted ESI when he went to LCI in April 2010.  *See* Doc.#224-2 at 20 (October 19, 2010, depo. of Andrew Mozingo).  Mozingo was only asked to image the server and the laptops of Marks and Sullivan.  Mozingo has never been given an opportunity to examine the wiped server to determine what ESI remains and what, although deleted, can still be recovered.  Mozingo was not asked to examine the images he made in April 2010 for relevant ESI until recently, after the Court's ruling granting in part PIC's Motion to Compel.  S*ee* Exhibit "D" hereto at 2 (LCI's Third Supplemental Disclosures).

The computer of Tom Guidry, who was LCI's Safety Manager at the time of the accident, was wiped after the accident, sometime in 2009.  *See* Doc.#233-3 at 20 (November 12, 2010, depo. of Robert John Maw, III).  The sentence bears repeating … the ESI from the computer of the safety officer of the scaffold company that erected scaffold which resulted in the largest scaffold collapse in history and which killed one person and injured six others was wiped.

LCI has produced e-mail "pst" files from only 2 employees – Craig Marks and Donnie Sullivan – even though many LCI employees and agents worked on the Plant Daniel project. LCI admits the laptop of Dan Anderson was stolen. *See* Doc.#193-6 at 1. The theft would have been avoided had LCI issued a written litigation hold order to all its employees and responded to PIC's requests for such ESI. The bottom line is despite notice, LCI still failed to preserve the company laptop which was on-site at Plant Daniel at the time of the accident.

LCI's failure to preserve evidence and produce relevant ESI from its servers and employees' laptops for more than seven months has caused prejudice to PIC's prosecution of its claims in this litigation. PIC was unable to provide its experts information and ESI that LCI deleted related to how the scaffold was built, why it fell and scores of other unknown information. Prior to this Court's ruling on the Motion to Compel, LCI had produced approximately 527 emails, 5,487 pages and some of the materials from the OSHA investigation, whereas PIC had produced 65,452 pages in discovery. PIC has no alternative way to obtain the deleted ESI other than an unbiased third party expert attempting to retrieve that which has been wiped. With no litigation hold or ESI protocol in place, PIC has no way to ensure LCI will not "wipe" additional computers or servers or lose additional ESI. Therefore, PIC respectfully requests this Court to order LCI to preserve all ESI for imaging by a computer forensics expert, in accordance with the protocol proposed herein, and order LCI to pay the costs of the imaging, examination and recovery by a court-appointed computer forensics expert.

## **LAW & ARGUMENT**

### **I.    THE COURT SHOULD ORDER LCI TO PRESERVE ALL ESI, PENDING THE FORENSIC INVESTIGATION**

#### **A.    Preservation of ESI is Required under the Federal Rules**

"[T]he courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Securities, LLC,* 685 F.Supp.2d 456, 461 (S.D.N.Y. 2010) (seminal case on ESI in federal courts). The Federal Rules of Civil Procedure require LCI to permit PIC, as the party making the request, to inspect, copy, test, or sample ESI. *See* Fed. R. Civ. Proc. 34(a)(1)(A). LCI has failed to take any steps to preserve ESI or issue a written litigation hold. As set forth herein and in PIC's Motion for Sanctions and Memorandum Brief in Support, LCI's failures in this regard constitute gross negligence. *Pension Comm.*, 685 F.Supp. 2d at 465 ("[T]he failure to issue a *written* litigation hold constitutes gross negligence, because that failure is likely to result in the destruction of relevant information."). Under Rule 34(b)(2)(E), LCI must produce ESI in response to discovery requests either in the form in which the information is usually maintained or in a usable form as responsive to discovery. LCI has failed to do this, and this Court should appoint a computer forensics expert to investigate and report on what ESI is available in native file format, as PIC requested.

#### **B.    LCI Has Failed to Preserve ESI**

As set forth below, LCI has completely failed to preserve relevant, discoverable ESI in accordance with the federal rules. Craig Marks was in the position of "Manager of Legal Affairs" for LCI at the time of the accident. However, Marks, who is a disbarred Louisiana attorney, took no steps to preserve ESI or other documents relevant to this litigation.[1] Marks did not issue a written

---

[1]    *See* Order, *In Re Craig W. Marks*, No. 05-B-0541 (La. 03/23/05), 897 So.2d 578, and Order, *In Re: Craig W. Marks*, No. 07-B-0350, (La. 05/15/07), 955 So.2d 1262.

litigation hold following the accident, and to date, no written litigation hold has ever been issued. *See* Doc.#233-1 at 75-76 (Marks depo.). He also knew of no one else at LandCoast who issued a written litigation hold order. *Id.* at 76.

Following the accident, no one at LCI was told to secure the on-site computer, or image it or preserve it. *See* Doc.#233-1 at 80 (Marks depo.). No one was told to image or preserve the computers of Jeff Hopkins, Chief Financial Officer, and R. Michael Morton, CEO, who are LCI's designated corporate representatives, or Dan Anderson, who is the corporate Vice President in charge of sales and the PIC-LCI contract. *Id.* at 80. In addition, no direction was given to preserve numerous other computers which would potentially contain relevant ESI, such as the computers, if any, used by the injured employees, or the Safety Manager at the time of the accident, Tom Guidry.

Robert Maw was employed by LCI from 2009 until 2010 as an IT department employee . He did not work for LCI in 2008 at the time of the accident. *See* Doc.#233-3 at 3 (Maw depo.). When Maw started work at LCI in January 2009, he was not told about the scaffolding accident.

> Q. January of 2009, did Craig Marks of Jeff Hopkins or Michael Morton ever come to you and say, Robert, look, we had this scaffolding accident in November of 2008. We need to secure and preserve all of the e-mail that may be related to that incident back in 2008. Anybody ever come to you and say anything like that?
>
> A. No sir. The only time I was informed of that was when I received the information from Mr. Marks in regards to a subpoena. So that is what I was informed.

*See* Doc.#233-3 at 34-35 (Maw depo.). LCI allowed Maw to wipe the e-mail server in 2009 after he began work. Maw testified that "it was written over seven times through NSA encryption style in order to wipe all data and erase it from the drive," which was a process, which "could take days or hours." *Id.* at 21.

Jeffrey Hopkins, LCI's designated corporate representative and Chief Financial Officer, testified that he did not place a hold on the LCI servers to preserve evidence related to the accident. *See* Doc.# 233-2 at 24 (Nov. 9, 2010, depo. of Jeffrey Hopkins). He stated that he didn't think a hold was needed, and he had never issued a hold to preserve evidence for LCI before. *Id.*

Despite repeated requests from PIC, LCI has utterly failed to preserve ESI. This Court should order LCI to preserve all remaining ESI for imaging by a computer forensics expert.

### C. Imaging by a Forensics Expert is Necessary to Prevent Further Loss of ESI

The duty to preserve evidence "includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Victor Stanley*, 269 F.R.D. 497, 522 (D. Md. 2010). This Court should appoint a computer forensics expert to image LCI's servers, laptops and computer system, because LCI has not changed its procedures regarding ESI since the accident and has failed in its duty to preserve. PIC has no assurance LCI will preserve ESI in accordance with the rules now.

Marks testified that LCI did not have a written document retention policy which covered ESI. *See* Doc.#233-1 at 75 (Marks depo.). Although Marks was aware of a laptop computer in the trailer on site at Plant Daniel, he was not aware whether that computer was backed up to the LandCoast server. *Id.* at 26, 30.

According to Maw, who worked in LCI's IT department, LCI's computer network does not have a complete backup for its servers and employee laptops. *See* Doc.#233-3 at 11-12 (Maw depo.). Maw testified he implemented a partial backup to an external hard drive sometime in 2009 for the accounting servers. *Id.* at 11.[2] However, the employees' laptops were not backed up regularly, and when employees' laptops "crash," often the ESI is gone. *Id.* at 12. According to Maw, the e-mail

---

[2] It is unknown what the status is of the ESI Maw put on this external hard drive.

servers were never backed up. *Id.*, at 13. Hopkins also testified that there was no backup for the e-mail servers. *See* Doc.# 233-2 at 27, 54.

Maw testified LCI's computer servers and laptops suffered from frequent crashes, resulting in losses of ESI. *See* Doc.#233-3 at 7 (Maw depo.). The e-mail server at LandCoast crashed, and he "had to get rid of the older temp files and older e-mails in order to compact the store down to where it would fit in the size it would operate." *Id.* at 31. Accordingly, he "wiped the old e-mail," with prior approval from LCI. *Id.* at 31. Sometime in January of 2009, Maw wiped the laptop of LCI Safety Director, Tom Guidry, after Guidry terminated. *See* Doc.#233-3 at 20 (Maw depo.).

From Maw's testimony, it appears even after the accident, LCI continued wiping computers when they crashed or when employees terminated. It is clear that LCI has failed to preserve evidence which is relevant to this litigation. This Court should order LCI to preserve any ESI that remains for forensic imaging.

## II. THE SEARCH CONDUCTED BY LCI'S COMPUTER "EXPERT" WAS INADEQUATE

Even when LCI retained Mozingo as a forensic "IT expert,"[3] and hired Maw for the LCI IT department, no attempt to recover deleted ESI was made. Sometime around April 7 or 8, 2010, LCI retained Mozingo to "immediately go down to Louisiana and image" LCI's computer drives." *See* Doc.#224-2 at 6, 11, 12-15 (Mozingo depo.). The directions given to Mozingo were for very limited forensic imaging. "I was asked to do a hard drive image of Craig Marks' laptop, as well as the e-mail server, as well as Donnie Sullivan's hard drive . . . ." *Id.* at 37 (Mozingo depo.).

---

[3] PIC reserves all objections and arguments regarding Mozingo's qualifications as an "IT expert." Mozingo's self-described certification is as "Computer Hacking Forensics Investigator," an unknown field that is not peer reviewed or reliable. *See* Doc.#224-2 at 20 (Mozingo depo.). Mozingo works as the IT Director for Lamar County in Purvis, Mississippi. *Id.* at 11-13. He has a computer forensics company on the side, Global Computer Forensics Investigation, LLC, of which he is the only employee. *Id,* at 9.

Mozingo was told by LCI that the server had been wiped:

Q.. Okay. Did Mr. Williams advise you and did anybody advise you that somebody before you had been in the LandCoast computer systems and servers and somehow could not retrieve information from it?

A. Not retrieve information from it.

Q. Were you aware of any type of problems with somebody else who had arrived before you working on the servers?

A. Yeah. I was aware that the server had been, quote, wiped.

Q. Okay
.
A. Which means that -- in my opinion, "wipe" means you can't recover any information from it, because when you do a wipe, then you write "0"s to every bit of the drive. Therefore, there's no way to recover any information. So I was aware that it had been wiped.

Q. Okay. Now, who told you that?

A. Mr. Williams.

Q. All right. And when did he tell you that?

A. I don't remember. April 7th, 8th, somewhere around in there.

Q. All right. And that's 2010?

A. 2010, yes.
…

*Id.* at 65-66.

Although LCI represents that Mozingo is now working to examine the images he made in April for relevant ESI, PIC has no reason to believe the imaging and recovery Mozingo is doing will be complete. *See* Ex. D at 3. Mozingo's expertise is as a "hacker," and he testified that retrieving information which was wiped or deleted from the LandCoast server was beyond his expertise. *See* Doc.#224-2 at 68 (Mozingo depo.).

> Q. So you don't even have the tools to image a server, since you've never done it?
>
> A. The same tools that I use to image laptops can be used on some servers, if they don't have a mirror, if they're not in a RAID configuration.
>
> Q. But in this case, they did have a mirror, and they were in the RAID configuration?
>
> A. That is correct.
>
> Q. And so you don't have the tools for that?
>
> A. That is correct.

*Id.* Mozingo never met with Maw to discuss the wiping of LCI's server after the November 4, 2008 accident. *Id.* at 42.

A producing party has the obligation to search available electronic systems for deleted e-mails and files. LCI's refusal to review backup tapes for deleted e-mails is improper. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317. (S.D.N.Y. May 13, 2003). Accordingly, this Court should appoint a computer forensics expert to conduct a proper search for the deleted ESI.

## III. APPOINTMENT OF A COMPUTER FORENSICS EXPERT IS APPROPRIATE IN CASES INVOLVING DELIBERATE SPOILATION OF EVIDENCE

LCI's approach to preserving and imaging its company laptops and servers has been piecemeal at best. To date, LCI has offered no explanation whatsoever for its failure to issue a written litigation hold. LCI has offered no details regarding its search for ESI. Rather, LCI says it will supplement its discovery responses as further ESI is captured. *See* Ex. D at 2.

In the Northern District of Mississippi, the Court appointed a forensics expert and awarded sanctions because the defendants were "unable to describe the databases searched, the search terms, methods or parameters used to search the databases or provide any expert information confirming that there are no documents, electronically stored information or other information responsive to plaintiffs' discovery requests." *Maggette v. BL Dev. Corp.*, 2009 WL 4346062 at *1 (N.D. Miss.).

Similarly, LCI has failed to provide an adequate explanation for its delay and failure to perform its own search for the deleted ESI. Despite repeated requests from PIC to work out an ESI protocol, LCI has not provided the necessary information on its systems, search terms, methods or parameters used to search for relevant ESI. This Court should appoint a computer forensics expert to image LCI's computer systems and recover deleted ESI, as discussed herein.

### A. This Court Has Authority to Appoint a Computer Forensics Expert

This Court may appoint a Special Master to address pretrial matters and make or recommend findings of fact, in accordance with Federal Rule of Civil Procedure 53. In addition, the Federal Rules of Evidence allow a federal court to appoint an expert witness, to be agreed upon by the parties. *See* Fed. R. Evid. 706; *Scott v. Spanjer Bros, Inc.,* 298 F.2d 928, 930 (2d Cir. 1962) ("The existence of the judge's power to call witnesses generally and expert witnesses particularly seems fairly well recognized in this country.").

### B.      Courts Have Appointed Computer Forensics Experts in Similar Cases Involving Spoliation

A court may appoint a computer forensics expert to address issues involving spoliation of evidence by allowing inspection of a party's hard drive and/or electronic communication system, and attempting recovery of data.  In this State, Magistrate Judge Alexander of the Northern District of Mississippi appointed a "third-party expert in the field of electronic discovery," where the defendants "failed to satisfy the court's inquiries calculated to determine the legitimacy of their searches." *Maggette*, 2009 WL 4346062 at *2.  The expert was appointed to determine "whether they have in good faith attempted to use preservation techniques reasonably available to them."  *Id.*

Courts in other jurisdictions have relied on court-appointed computer forensics experts in similar disputes over deleted e-mails.  In *Playboy Enter., Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999), the plaintiff requested access to the defendant's computer hard drive to attempt to recover e-mails which were relevant for discovery.  The defendant had admitted she had a custom and practice of deleting electronic mail soon after sending or receiving it, "irrespective of whether the e-mail was responsive to the plaintiff's discovery requests." *Playboy v. Welles,* 60 F.Supp. 2d at 1051.  The Court found appointment of a computer expert who specialized in the field of electronic discovery was warranted if some of the e-mail might be recovered.  *Id.* at 1054-55.  The Court set forth the protocol for the computer expert to be appointed as an officer of the court to conduct the forensics investigation. *Id.*

In *Antioch v. Scrapbook Borders, Inc.*, the plaintiff filed a motion to compel and appoint a neutral expert in computer forensics because the defendants' computer hard drives were being constantly over-written.  *Antioch v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 650 (D. Minn. 2002). The Court granted the motion, because defendants used e-mail as a form of communication for their business, and information was "being lost through normal use of the computer, and which might be

relevant to the Plaintiff's claims, or the Defendants' defenses." *Id.* at 652.  The Court set forth a protocol for the forensics investigation similar to the protocol PIC proposes below.

In *Bank of Mongolia v. M & P Global Fin. Servs., Inc.*, despite claiming all responsive documents had been produced, defense counsel admitted the defendants had not performed a search of all deleted and unsaved electronic databases. *Bank of Magnolia v. M&P Global Fin. Servs. Inc.*, 258 F.R.D. 514, 517 (S.D.Fla. 2009).  The Court granted the plaintiff's motion to compel, and ordered an independent forensics expert to be allowed access to the defendants' computer systems to search for the deleted responsive files. *Id.* at 520.

In this case, it is appropriate for this Court to order imaging by a computer forensics expert to attempt to recover ESI which LCI wiped from its computer server. *Antioch v. Scrapbook Borders, Inc.*, 210 F.R.D. at 652 ("deleted computer files, whether they be e-mails or otherwise, are discoverable").  Federal district courts have consistently held that electronic data stored on computer hard drives, including "deleted" files and related data, is subject to discovery. *See Orrell v. Motorcarparts of America, Inc.*, 2007 WL 4287750, at *7 (W.D.N.C. 2007); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 572 (N.D.Ill. 2004); *Zubulake v. UBS Warburg, LLC,* 217 F.R.D. at 316-17; *Rowe Enter., Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002).  PIC respectfully requests this Court to appoint a computer forensics expert to attempt recovery of deleted ESI.

    **C.**    **Appointment of a Computer Forensics Expert is Necessary Because PIC Has No Other Way to Obtain Missing ESI**

PIC has tried on numerous occasions to obtain the missing ESI from LCI, and has made good faith efforts to satisfactorily resolve this discovery dispute with LCI's counsel, in accordance with Fed. R. Civ. P. 37(a)(2)(B).  To date, LCI has produced e-mail files from only two employees.  A computer forensics expert is needed to attempt to obtain forensic recovery of deleted ESI meta-data from LCI's servers, employee laptops and/or backup tapes.  *See Gutman v. Klein*, 2008 WL 4682208

at *13 (E.D.N.Y. 2008) (discussing appointment of forensic expert to prepare a report on whether deleted files were rendered unrecoverable). This type of forensic recovery is beyond the expertise of LCI's hacker "IT expert" or its employees. *See* Doc.#224-2 at 68 (Mozingo depo.); *see* Doc.#233-3 at 11, 17 (Maw depo.). PIC requests the Court to appoint a computer forensics expert to attempt to recover the deleted ESI, because PIC has no other way to obtain this relevant information.

## IV. THE COURT SHOULD ORDER LCI TO PAY THE COST OF THE COURT-APPOINTED COMPUTER FORENSICS EXPERT

Even mere negligence in the preservation or prompt production of discoverable ESI can be sanctionable. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2001). Here, LCI intentionally "wiped" ESI. In accordance with the federal rules, the Court should order LCI to pay the costs of the computer forensics expert. As Fed.R.Civ.P 53(g)(3) provides:

> The court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master. . . .

Because of its intentional spoliation, LCI should bear all costs of forensic imaging, examination, and recovery of the deleted ESI. *See Oppenheimer Found., Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("it is the general presumption that the responding party bears the cost of responding to discover requests."); *see also Playboy v. Welles*, 60 F.Supp. 2d at 1055 ("the burden of attempting the recovery must fall on Defendant as this process has become necessary due to Defendant's own conduct of continuously deleting incoming and outgoing e-mails, apparently without regard for this litigation."). Any extra costs required for imaging and recovery by the court-appointed computer forensics expert are due solely to LCI's acts in failing to preserve the evidence and/or deliberately wiping its laptops and server.

**V.   PIC'S PROPOSED PROTOCOL FOR THE FORENSIC RECOVERY OF ESI WILL NOT PREJUDICE LCI**

PIC proposes that the Court order the following protocol to be followed by the parties for the recovery of the deleted ESI:

1) The Court appoints a computer forensics expert by January 15, 2011.

2) To protect issues of privilege and confidentiality, the parties will utilize the Stipulated Protective Order already in place in this litigation (Doc.#87).

3) LCI shall make all corporate servers and laptops of key personnel identified by PIC in its discovery requests available to the expert for examination and imaging on a date to be set by the Court.

4) The expert shall inspect the corporate servers, laptops, and network of LCI and present to the Court a proposed protocol to attempt to recover the computer data and ESI and organize it in a reasonably searchable form.

5) The expert shall conduct the recovery of ESI. The recovered data will be provided to LCI, with notice to PIC.

6) The expert shall provide a written report to the Court on his findings.

7) LCI shall have until February 15, 2011 to review the recovered data and supplement its discovery with responsive documents and/or provide a comprehensive privilege log which complies with the requirements of Fed. R. Civ. Pro. 26(b)(5)(A). (February 15, 2011 is 2 weeks before the discovery cutoff on March 1, 2011. *See* Doc.#77.)

8) The expert shall present an invoice for all fees and costs associated with the imaging, examination and recovery of ESI.

9) LCI shall pay the invoice when submitted.

The foregoing suggested protocol is based upon that used by the United States District Court for the District of Maryland pursuant to its Local Rules.[4]

## CONCLUSION

PIC respectfully requests the Court to order LCI to preserve all ESI pending imaging and examination and to appoint a third party computer forensics expert to recover deleted ESI relevant to the November 4, 2008 accident and this litigation. PIC further requests that the Court order LCI to cooperate with the court-appointed forensics expert in accordance with the proposed protocol set forth herein. PIC requests that the Court order LCI to pay all fees, costs and expenses of the computer forensics expert and the imaging, investigation, and recovery of ESI. Finally, PIC prays that the Court will Order LCI to pay PIC attorneys' fees, expenses and costs associated with this motion and the depositions and discovery that would not have been required but for LCI's intentional deletion of ESI relevant to the accident.

Dated: December 21, 2010

Respectfully submitted:

**FRILOT L.L.C.**

*/s/ David P. Curtis*
**ALLEN J. KROUSE, III (LSBA# 14426)**
By *Pro Hac Vice*
E-mail: akrouse@frilot.com
**TONI J. ELLINGTON (LSBA# 33115)**
By *Pro Hac Vice*
E-mail: tellington@frilot.com
**DAVID P. CURTIS (MSBA# 102092)**
E-mail: dcurtis@frilot.com
3700 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-3700
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
**ATTORNEYS FOR PLAINTIFF
PIC GROUP, INC.**

---

[4] *See* http://www.mdd.uscourts.gov/localrules/localrules.html

- 17 -

**<u>CERTIFICATE OF SERVICE</u>**

      I, the undersigned, hereby certify that on December 21, 2010, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                                *<u>/s/ David P. Curtis</u>*