IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PIC GROUP, INC.                                                                                       PLAINTIFF

VS.                                                              CIVIL ACTION NO. 1:09-CV-662-KS-MTP

LANDCOAST INSULATION, INC. AND
ZURICH AMERICAN INSURANCE CO.                                                          DEFENDANTS
DEFENDANTS

**Report and Recommendations of Special Master, Craig Ball**

**Your Honor:**

I incorporate by reference, as if set out fully herein, the information and recommendations set out in my Interim Status Report of April 26, 2011.

Since my last report, a substantial volume of electronic evidence has been produced by LandCoast Insulation, Inc. ("LandCoast") to PIC Group, Inc. ("PIC Group").  Though not all of this information is unfamiliar or material in nature, some of it is unquestionably of a character that it should have been found and produced long ago.  I'd hoped to be able to report that supplementation by LandCoast was complete, and certainly Land Coast and its counsel have made a laudable effort to rectify non-production using surviving sources of ESI that were not, until lately, identified or searched in a timely way.

But as of June 3, 2011, LandCoast missed, by several days, its projected deadline for completion of supplementation of discovery with the responsive ESI it was obliged to produce.  I do not attribute LandCoast's failure to meet its own deadline as stemming from a lack of diligent effort.  There were extenuating circumstances involving software glitches and illness.  I am assured that all the outstanding, potentially responsive ESI has been processed and placed in defense counsel's hands for review.  If they stay on top of it, I expect that LandCoast is genuinely close to completing such supplementation in a few more days.

But with trial so close, days matter; and the fact that LandCoast could not meet its own deadline augers in favor of affording the Plaintiffs more time to assimilate the new material.  I regard this as a remedial, rather than punitive, response.

I devote this report to making a recommendation on sanctions and remediation.  In making these recommendations, I have considered the Motion for Sanctions filed by PIC Group on

December 21, 2010.  To the extent that PIC Group seeks sanctions that I do not commend to the Court here, I hold the opinion that such sanctions are unwarranted or not well suited to the instant circumstances.  Though I believe the evidence gathered in my investigation of LandCoast's discovery abuse warrant strong sanctions and aggressive remedial measures, I do not support the dispositive sanctions sought by PIC Group.  There were clearly instances of intentional misconduct, bad faith and gross negligence attendant to LandCoast's abject failure to meet its e-discovery duties; but, in the main, LandCoast's failures grew out of a callous and careless attitude toward discovery more than from a craven effort to hide or destroy information.  LandCoast has bent the system, but not so far that I can recommend it be denied its day in court.

**Advocacy**

My role here is that of a neutral officer.  I approached my work without bias or favor to either side and have conducted an investigation that afforded both sides ample opportunity to furnish all information they deemed instructive.  My investigation affords me an evidentiary basis to form opinions about the parties' conduct—not out of bias, but grounded on proof.  I do not see neutrality as a mandate to ignore the evidence once received or afford all parties' evidence equal weight or credibility.  Moreover, one of the tasks given me is to offer recommendations to the Court respecting sanctions and remediation, if warranted.  Supporting those recommendations entails some advocacy for my own conclusions.  To the extent those conclusions coincide with one side's view or another's; I am not serving as any party's advocate.

**Lack of Sophistication**

I've repeatedly been advised that LandCoast was not a "sophisticated" company, the implication being that LandCoast should be held to a lower standard with respect to the management of its own business information and systems.  Yet, I observed that LandCoast personnel used e-mail, laptops, smart phones, external hard drives, flash drives and the other accustomed accouterments of modern business.  Inspecting the premises, I saw legacy servers and systems that suggested information technology had been among the tools of LandCoast's trade for many years.

LandCoast's failures were not a shortfall of sophistication.  The responsive ESI that's come to light was not found or preserved through the use of sophisticated tools or sophisticated techniques.  *Finding it* simply entailed *looking for it* in no more sophisticated a way than a secretary looks for a document or a salesperson looks for an e-mail.  The time that it has taken for Land Coast to make production since my inspection in March is a function of how *much* responsive data had been overlooked, all of it in common, everyday business formats.

LandCoast recognized its own shortcomings. Perhaps the first thing lead defense counsel said to me in our first conference was that he was a "dinosaur" where computers and electronically stored information are concerned. It was pointed out to me on multiple occasions that, for much of the time when ESI should have been preserved, searched and produced, there was no one at LandCoast responsible for the company's information systems or else that responsibility devolved on someone who confided they didn't really understand the systems very well. This may help explain why, for example, the existence of backups was denied although a visit to LandCoast's server room would have shown there were *so many* backup devices cabled to the servers that the machines looked like a litter of pups at supper time.

**Recommendations for Remedial Actions and Sanctions**

In framing the following recommendations, I considered a range of tools available to the Court including, *inter alia*:

1. Chastisement in open Court;
2. Rebuke in a published order;
3. Continuance;
4. Reopened discovery;
5. Broadened scope of discovery;
6. Cost shifting;
7. Re-deposing witnesses, with or without cost shifting;
8. Award of attorney's fees;
9. Compulsory waiver of certain privileges;
10. Monetary sanctions;
11. Burden shifting;
12. Adverse inference instruction (rebuttable or conclusive);
13. Issue preclusion;
14. Dispositive sanctions;
15. Civil contempt proceedings; and/or
16. Referral to law enforcement and/or disciplinary authorities.

Some of these are remedial, not punitive, in nature. Others are wholly punitive. I do not regard purely remedial measures as sanctions; however, if remedial measures serve to mitigate prejudice from misconduct prompting sanctions, they may justify imposition of less severe sanctions.

Land Coast may assert the substantial costs its insurance carrier incurred for the recent effort to cure its failures to produce ESI has already serve as a sanction. However, it should be noted that LandCoast merely deferred costs of e-discovery it was obliged to incur much earlier, at a time when compliance would have been far simpler and cheaper. To the extent that delay and

destruction added to the volume and complexity of the work or entailed more costly, expedited efforts, LandCoast was the architect of its own demise.

**Reopening Discovery and Continuance**

There are two courses of prejudice here.  One flows from the failure to produce relevant and responsive ESI in a timely manner, so that this evidence could have been used to interrogate witnesses, guide inquiry and abet resolution.  Evidence is the currency of the courtroom, and delaying production leaves the Court and the litigants shortchanged.  The second course of prejudice flows from the loss and destruction of material that can never be reproduced and from the uncertainty whether what was lost would have changed the conduct or outcome of the case.

The delay here had broad impact of long duration.  It was unjustified and disruptive, but it can be remediated.

The prejudice by loss and destruction is harder to characterize without speculation into the nature of an unknown.  The more thoroughly a party has negligently or intentionally destroyed potentially responsive ESI, the less they should be indulged in the presumption that it was inconsequential.  Still, I am inclined to discount somewhat the harm stemming from the failure to preserve ESI from the laptops of Dan Anderson, Tom Guidry and Joe Rider.

Certainly, the coincidence of catastrophe that struck these three key players is troubling, but it has none of the earmarks of a coordinated effort.[1]  Finding the e-mail backups that LandCoast claimed did not exist allows some insight into the data that would have been on the lost laptops because, in the 21st century, documents created tend to be documents transmitted.  Because a fairly complete collection of the e-mail of Anderson, Guidry and Rider has lately been found (and is the process of being produced to plaintiffs' counsel), experience dictates that much of the information that could have been gleaned from the lost laptops will reside in the messaging and attachments.  At the very least, the e-mail will shed light on whether there might have been crucial evidence on the lost laptops.

Remediation of the prejudice flowing from delay entails two steps.  First, the party deprived of the information has to receive it.  Second, that party must have an opportunity to assimilate and use the information in the development of the case.  Plaintiffs contend that the material now being produced is material and probative.  They argue that they must be given the

---

[1] For example, the theft and wipes don't correspond to a particular push to obtain the data.  The mechanisms of loss (if accurately related) were all distinct and corroborated to some extent.  The testimony about the reasons for the wipes is less coherent than what I'd expect if there had been some cabal behind same.  The plaintiffs' belief that the Anderson laptop theft was staged isn't fully negated by the police report; but I've not encountered, nor have Plaintiffs supplied, anything to suggest that the laptop *wasn't* stolen as claimed.

opportunity to re-depose witness using the newly-discovered material.  Defendant counters that the belated material is largely cumulative and immaterial.  Both sides' positions have merit, and I am loathe to engender further delay in the resolution of this case; but, the more prudent course to eliminate prejudice is to allow the Plaintiff an opportunity to re-depose certain witnesses so long *as further inquiry does not stray far afield of the specific content of the belated production*.

These depositions should not be a "do-over," nor should they serve as an opportunity to re-address matters that are not closely tied to the contents of the latest production.  Further, I cannot recommend that the entire cost of depositions, limited in scope as I describe, be borne solely by the defendant *except to the extent that the Plaintiff can demonstrate that certain costs* (e.g., reasonable travel and lodging expenses) *would not have been re-incurred had production been made before the witness' prior deposition*.  The attorney time spent asking questions about the production and the page cost to transcribe the testimony would have been largely the same whether the production was delayed or timely.  Only deposition costs flowing principally from the delay should be shifted.

If the Court permits re-deposing certain witnesses but the parties cannot agree who to depose, the burden should be on the Plaintiffs to establish that the need for a particular witness' further testimony is occasioned by newly produced information.

It's conceivable that the defendants might complete their supplementation, plaintiffs their review and both sides the depositions before the currently scheduled trial; but it isn't likely, particularly as Plaintiff's counsel claims cause to depose ten witnesses.  Accordingly, and with misgivings, I recommend that discovery be re-opened in a limited manner and the case be continued from its current setting for a period of sixty to ninety days, if the Court's calendar permits. I further recommend that the parties be instructed to meet and confer in an effort to arrive at a discovery plan for the Court's consideration that limits the time and scope of further discovery consistent with the objective that further discovery be limited to matters newly implicated by the belated production.

**Attorney's Fees and Costs**
Plaintiff seeks payment of attorney's for "Time Spent on ESI Related Issues" since November of 2010.  Plaintiff's counsel puts that sum at $61,988.50.  Parties to a lawsuit may disagree in good faith on many issues that necessitate motion practice, and parties shouldn't be deterred from honestly pursuing or resisting motions out of a concern that they will be obliged to bear their opponent's attorney's fees.  But there comes a point where a party's recalcitrance or incompetence in meeting obligations loses the character of a good faith dispute and becomes an act of obstruction.  Here, Plaintiffs afforded the defense ample opportunity to rectify serious and substantial failures to meet discovery duties before November of 2010.  In depositions,

Plaintiff's counsel underscored why the defendants and defense counsel were not justified in assuming their e-discovery efforts had been competent or complete.  By the time Andrew Mozingo and Robert Maw were deposed (on 10/19/10 and 11/11/10, respectively), it should have been manifestly clear to the defense that its e-discovery efforts were inadequate and indefensible.

PIC Group first made its concerns about spoliation, data wiping and the need for a neutral expert known in a filing on November 1, 2010.  A Motion for Sanctions and to appoint a neutral forensics expert followed on December 21, 2010.  By January 13, 2011, when Land Coast filed its responses to these motions, LandCoast spoke prospectively about its use of a forensic examiner, but it was clear from the tenor of the reply that no substantive work had been done and, more disturbingly, LandCoast gave short shrift to the concerns expressed.  LandCoast was in a state of denial, and by its failure to act, LandCoast's recalcitrance and incompetence in meeting its obligations moved the matter from the realm of good faith dispute to one of obstructionism.

It's my opinion that, beginning sometime between November 1 and December 21, 2010, some of the attorney's fees incurred by PIC Group in connection with LandCoast's mishandling and spoliation of ESI should properly be assessed against LandCoast as a remedial measure.  I cannot recommend that all fees for what Plaintiff's counsel terms "time spent on ESI related issues" be shifted to LandCoast as it may be that some of the time claimed would have been expended absent malfeasance (e.g., review of ESI produced belatedly).  Other time expended due to LandCoast's actions, particularly plaintiff's counsels' time consumed by my investigation, periodic ESI status conferences and responding to my requests for information, should be borne by LandCoast.

I recommend that the Court seek a detailed accounting of the time and expenses which Plaintiff incurred as a direct consequence of LandCoast's failure to meet its e-discovery obligations and, if the Court deems them just and reasonable, that those expenses (or a lesser amount in the Court's discretion) be repaid to Plaintiff by LandCoast.  If the Court wishes to have the cost shifting also serve as a sanction, I recommend that the Court add the proviso that LandCoast be barred from seeking or recovering such sums from its insurance carrier or any indemnitor.

**Special Master's Fees and Expenses**
My appointment, and the costs and expenses occasioned by my work, were made necessary by LandCoast's failure to meet its discovery obligations in a competent, candid or timely way.  In its appointment order, the Court assessed all such charges against LandCoast.  I recommend the Court not shift or divide such charges, but should, as a remedial measure, continue to visit the costs of my work on LandCoast as the proper party to bear same.

**Waiver of Privilege for LandCoast Laptop Used by Craig Marks**

In my interim status report of April 26, 2011, I recommend that the actions of bad faith and intentional spoliation of ESI respecting the LandCoast laptop used by Craig Marks (LandCoast's Manager of Legal Affairs) be addressed by the Court ordering that the entire contents of the Marks laptop be furnished to Plaintiff's counsel, unshielded by claims of privilege or challenges to relevance.  I stand by that recommendation, bolstered by the fact that the misconduct I identified is not in dispute, but only the scope and motives for same.

Mr. Marks still serves as LandCoast's Manager of Legal Affairs, although I am informed that he is no longer the person within the company principally responsible for discovery in this matter. Whether LandCoast continues to employ Mr. Marks to manage its legal affairs is not my concern; but, LandCoast does so despite Mark's concession that he knowingly and intentionally ran data destruction software after being directed not to do so.  So, while I think it proper to charge LandCoast with Marks' spoliative conduct by virtue of his managerial role, doing so is further warranted by LandCoast's ratification of Marks misconduct.

Since my interim report, LandCoast has suggested that Mr. Marks' action were geared only to the destruction of information connected to other litigation, but not to the instant case.  I did not find this reassuring insofar as LandCoast's perception of its preservation obligations.  I cannot attach any credibility to Mr. Marks' claim that, on the day I arrived to look at his computer in this litigation, he confined himself solely to destruction of ESI not related to this litigation or the subject construction project.  Even if I were so naïve as to accept the claim, I would question the capability to deploy the wiping tool used with such precision.  It has no setting for "wipe only evidence in other matters."  That LandCoast's forensic expert, Jerry Hatchett, found no remnants of data pertaining to this case in his examination of Marks laptop speaks as much to the likelihood of Marks having targeted information in this case for destruction as it does to his having studiously excluded same from his swath of spoliation.

We will likely never know all that Marks destroyed or what his true motive might have been. He succeeded too well in his efforts.  In the final analysis, I do not believe Plaintiff will be materially prejudiced by a lack of relevant information attributable to Marks' misconduct.  The greater damage flows from the uncertainty fostered by Marks' actions and the pallor it casts on a system that cannot function if litigants are free to destroy evidence with impunity.  If Marks hadn't already been disbarred, I would have recommended he be referred to the Louisiana Bar for discipline.  Lacking that avenue, sanction is fairly visited upon those who made him (in defense counsel's words) "the clearinghouse for all privileged communications for LandCoast." Those who stationed the fox at the henhouse door should not be heard to complain about the lack of eggs.

I again recommend that LandCoast be ordered to turn over to PIC Group's counsel the forensic image of Marks' laptop secured on or about March 19, 2011. I see no cause to grant access to the hardware or to its contents on any later date. I further recommend that the Court impose reasonable and appropriate limits on Plaintiff's counsel's use or disclosure of content unrelated to the issues in the pending lawsuit and that the Court enter an order pursuant to Federal Rule of Evidence 502(d) establishing that, with respect to other proceedings, applicable privileges or protections are not waived by disclosure connected with the litigation pending before this court.

**Monetary Sanctions**

A monetary sanction would be an effective response and deterrent here, but only if it serves to sanction the bad actor. If a monetary sanction will be borne by an insurance carrier or indemnitor, it does nothing to punish LandCoast for its wrongdoing. In the face of the other remedial actions and sanctions I've recommended, a monetary sanction need not be large in amount, but it should be fashioned to hit the mark. Accordingly, I recommend a monetary sanction in a sum not greater than $50,000.00 be assessed with the condition that it may not be paid, reimbursed or indemnified by anyone other than LandCoast and that no mechanism or artifice may be employed to shift the cost of such sanction to another person or entity. There is precedent for this approach in *Phoenix Four, Inc. v. Strategic Resources Corp.*, 2006 WL 1409413 (S.D.N.Y. 2006).

**Adverse inference Instruction**

As a sanction, Plaintiff seeks an adverse inference instruction that lost evidence was relevant and would have been favorable to PIC Group. I am reluctant to commend such an instruction to the Court. I do not see such an instruction as having a substantial punitive impact on PIC Group here (although it may serve as an effective deterrent to others). Its sting, if any, will most likely be felt principally by insurance carriers who have played no role in the malfeasance. Further, in cases where liability is not the principal contested issue, adverse inference instructions tend to have little substantive impact. If the goal is to punish, it's a lenient punishment here.

Should the Court elect to give an adverse inference instruction, I recommend it take the form of a rebuttable presumption. That is, I recommend it be rebutted by such evidence as LandCoast can offer demonstrating, e.g., that no evidence was lost, evidence lost was not relevant or that lost, relevant evidence would not have favored PIC Group.

**Conclusion**

Ultimately, I hope I have succeeded in getting the parties and counsel to a posture where they possess the information needed to fully present their positions to the Court and support them by competent evidence. The parties are best situated to speak for themselves on these matters, and I believe now they have a sufficient understanding of the systems, sources and events to do so.

Thank you for the opportunity to serve as this Court's Special Master, and I look forward to addressing any of the matters within my purview in greater detail at the hearing on June 16, 2011.

Respectfully Submitted,

_____
Craig Ball
Texas Bar No, 01632200
3723 Lost Creek Blvd.
Austin, Texas 78735
TEL: 512-514-0182
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com


**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2011, I transmitted the foregoing to chambers via e-mail for filing using the CM/ECF. I further certify that I have served a copy of the foregoing on Plaintiffs' and Defendant's Counsel by e-mail.

_____
Craig Ball
Texas Bar No, 01632200
3723 Lost Creek Blvd.
Austin, Texas 78735
TEL: 512-514-0182
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com