IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PIC GROUP, INC.                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 1:09–CV–662–KS–MTP

LANDCOAST INSULATION, INC., et al.                                 DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons stated below, the Court adopts in part the Report and Recommendations [373] of the Special Master.

<u>I. BACKGROUND</u>

The parties are aware of this matter's factual and procedural history. Therefore, rather than retread familiar ground, the Court adopts and incorporates the factual and procedural backgrounds included in its previous orders. *See PIC Group, Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662-KS-MTP (S.D. Miss. Nov. 18, 2010) (order granting in part and denying in part motion to compel); *PIC Group, Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662-KS-MTP (S.D. Miss. Feb. 18, 2011) (order granting motion to appoint expert for computer forensic recovery of ESI); *PIC Group, Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662-KS-MTP (S.D. Miss. May 18, 2011) (order setting status and discovery conference and motions hearing).

On March 4, 2011, the Court appointed Craig Ball as Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure. *PIC Group, Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662-KS-MTP, 2011 U.S. Dist. LEXIS 41441 (S.D. Miss. Mar. 4, 2011). The Court tasked the Special Master with investigating and advising the Court as to the nature, extent, and sufficiency of the identification, preservation, collection, search, processing, and production by Defendant of

potentially responsive and relevant information – particularly electronically-stored information ("ESI") – as it relates to discovery in this case. *Id.* at *4. The Court specifically instructed the Special Master to investigate computer data allegedly lost; the efforts made to preserve, recover, or replicate such data; and the ability, necessity, cost, and complexity of retrieving it. *Id.* Further, the Court instructed him to provide a recommendation on Plaintiff's Motion for Sanctions [258], and to file a written report outlining his conclusions and activities. *Id.* at *4-*5. The Court held that it would review the parties' objections to the Special Master's findings of fact or conclusions of law on a *de novo* basis, but that any other order, report, or recommendation from Ball would be set aside only if it was clearly erroneous or contrary to law. *Id.* at *6. Finally, the Court ordered that the Special Master's compensation, costs, and expenses shall be paid by LandCoast, but the Court reserved the right to modify that ruling in light of his findings. *Id.* *6-*7 (citing FED. R. CIV. P. 53(g)(3)).

## A.    *The Special Master's Interim Report*

On April 26, 2011, the Special Master submitted an interim status report [372]. He summarized his findings to that point: "LandCoast's e-discovery compliance in this case was wholly devoid of competence, yet only once motivated by guile." The Special Master traveled to Defendant's headquarters in New Iberia, Louisiana, on March 18, 2011, to acquire data from sources he believed likely to contain responsive ESI, to which he could later compare Defendant's prior discovery responses. The Special Master represented that Defendant's counsel and ESI consultant provided the utmost cooperation and assistance. However, his interim analysis of Defendant's behavior and efforts in preserving responsive ESI was less complimentary.

First, the Special Master discovered that much – perhaps all – of the ESI sought by Plaintiffs

2

was "readily available and principally resides in places that one would routinely look for same." In April 2010, Defendant's counsel employed a purported expert, Mr. Andrew Mozingo, to identify responsive ESI. The Special Master provided a candid assessment of Mozingo's qualifications: "He was a well-intentioned novice given unreliable information." Defendant advised Mozingo that its e-mail server had been wiped in the summer of 2009, and Mozingo accepted Defendant's representation without attempting to verify its truthfulness or recover any of the allegedly erased data. However, the Special Master found in his first visit to New Iberia the e-mail data which Defendant claimed had been erased . A portable hard drive was connected to the e-mail server, and it was named "Backups." It contained what appeared to be a complete collection of company e-mail since well before the e-mail server "wipe," and the Special Master believed it contained "hundreds – if not thousands – of responsive items."[1] He concluded that Defendant was not "acting in bad faith to conceal the information." Rather, "they simply had no idea what they had and exerted little effort to investigate."

The Special Master "found no evidence of any corporate policy, procedure or concerted effort on LandCoast's part to preserve electronic evidence." Defendant did not issue a formal, timely litigation hold to its key personnel or IT staff. Further, it made no attempt to collect or sequester data. The Special Master stated, "I saw no evidence that LandCoast or its counsel engaged anyone to preserve, collect or examine potentially responsive ESI until long after" they should have. Finally, he observed that "neither current nor prior defense counsel appreciated how far their perception of the work done to produce ESI fell short of the reality of its non-production." According to the

---

[1] In his final Report and Recommendations, Ball noted that Defendant's server room contained several back-up devices.

Special Master, Defendant's previous counsel treated the ESI issues "as a nuisance," ignoring them as long as possible. However, Defendant's current counsel has made notable strides, finally retaining a qualified expert, Mr. Jerry Hatchett.

Perhaps the most noteworthy section of the Special Master's interim report was that concerning Defendant's Manager of Legal Affairs, Craig Marks. Marks is Defendant's principal liaison with outside counsel, and he was responsible for ensuring Defendant's compliance with ESI preservation and production obligations. Indeed, the Special Master observed that Marks took an active role in this case, acting as Defendant's unofficial general counsel.[2] Shortly after the Special Master's appointment, he e-mailed instructions to counsel, which were then forwarded to Marks. In his e-mail, the Special Master advised that immediate, affirmative steps should be taken to ensure that employees did not attempt to destroy data or engage in any other actions meant to impede the investigation. The Special Master explicitly stated that he had no interest in any activity or information that was irrelevant to this case. He assured the parties that he did not intend to report any inappropriate uses of their computer which were irrelevant to this case, with one exception: evidence that a computer's user was "amassing or trading in child pornography."

On the morning of March 18, 2011 – the day Marks knew Ball was coming to collect data – Marks used a piece of antiforensic software named "Piriform CCleaner" to destroy information

---

[2]Marks holds a law degree from Louisiana State University, and he was a practicing attorney for many years before joining Defendant. In 2004, he "pleaded no contest to one felony count of indecent behavior with a juvenile . . . arising out of his intimate relationship with a fourteen-year old girl." *In re Marks*, 955 So. 2d 1262, 1263 (La. 2007). According to the recommendation of the Louisiana Attorney Discipline Board, Marks was implicated, at least in part, by ESI. *See In re Craig W. Marks*, No. 05-DB-037 (La. Attorney Discipline Bd. Feb. 16, 2007) (Recommendation to the Louisiana Supreme Court). The Supreme Court of Louisiana permanently barred Marks from practicing law. *In re Marks*, 955 So. 2d at 1263.

on his computer. The Special Master noted that CCleaner is not illegal, and that there is nothing inherently sinister about a computer user protecting his or her privacy. Indeed, CCleaner is marketed as a "system optimization, privacy and cleaning tool." *See* http://www.piriform.com/ccleaner/. While it "cleans traces of your online activities such as your Internet history," it also "removes unused files from your system – allowing Windows to run faster and freeing up valuable hard disk space." *Id.* However, the Special Master concluded that Marks' actions were not motivated by legitimate concerns. Rather, he believes that Marks intentionally ran the program in an effort to conceal information before the investigation. The Special Master noted: 1) Marks is Defendant's Manager of Legal Affairs; 2) Marks holds a law degree; 3) Marks was a practicing litigator for many years; and 4) Marks used the program on the morning of the day he knew the Special Master would arrive to search for data.[3]

The Special Master could not ascertain what data Marks erased from the computer. Indeed, he admitted that he does not know whether it was relevant or discoverable. However, the Special Master believes that Marks "acted with contempt for the rights of the parties and the Court," and he asserted "with confidence" that Marks intentionally destroyed data on the morning he was scheduled to search for relevant and discoverable ESI. The Special Master recommended that the Court order Defendants to produce the entire contents of Marks' computer, regardless of privilege or relevance.

The Special Master reported other examples of destroyed or lost information. One of

---

[3]The Special Master noted that Andrew Mozingo had pulled data from Marks' laptop earlier in the case. His analysis of the data revealed that Marks had periodically used a program called "Privacy Protector X-Treme" to delete data from the computer. In fact, Marks used the program immediately before Mozingo pulled data from the laptop. However, after analysis of the program's logs, the Special Master believes that Marks had it set to run daily and failed to disable it once he had a duty to preserve ESI. In contrast, the CCleaner program was manually executed.

Defendant's employees, Dan Anderson, claimed that his laptop was stolen from his parked car approximately a year after the scaffolding collapse. Before the theft, Robert Maw, Defendant's IT Manager at the time, imaged the laptop's contents to create a backup. However, Maw later claimed to have lost the drive image. Also, two to three months after the scaffolding collapse, Maw completely erased the contents of the computer used by Tom Guidry, Defendant's Manager of Operations.

**B.      *The Special Master's Final Report and Recommendations***

On June 3, 2011, the Special Master provided the Court with his final Report and Recommendations [373].  He noted that Defendant had produced a substantial amount of ESI, but that they had not yet completed production. He did not attribute Defendant's failure to complete discovery to lack of diligence, however. He noted "extenuating circumstances involving software glitches and illness." He summarized his findings: "There were clearly instances of intentional misconduct, bad faith and gross negligence attendant to LandCoast's abject failure to meet its e-discovery duties; but, in the main, LandCoast's failures grew out of a callous and careless attitude toward discovery more than from a craven effort to hide or destroy information."

Although the Special Master was repeatedly advised by Defendant and its counsel that Defendant was not a "sophisticated" company, he observed that Defendant's employees used e-mail, laptops, smart phones, external hard drives, flash drives, and other devices typical to a modern business setting. Additionally, while on Defendant's premises, he saw older server models, indicating that Defendant had utilized IT systems for some time. Finally, the Special Master noted that he didn't find the responsive ESI through sophisticated tools or techniques. Rather, he simply looked for it, in the same manner that a secretary looks for a document or e-mail.

6

The Special Master noted that Plaintiff was prejudiced by Defendant's failure to provide relevant and responsive ESI in a timely manner, which prevented Plaintiff from using the materials as it would any other evidence. As a remedy, the Special Master recommends that the Court allow Plaintiff to re-depose certain witnesses as to the specific content of the ESI which was recently produced, that Defendant bear the cost of the depositions to the extent that Plaintiff can demonstrate that they would not have been incurred if the ESI were timely produced, that discovery be re-opened, and that all scheduled dates continued for sixty to ninety days for the limited purpose of addressing the belatedly produced ESI.

With respect to fees and costs, the Special Master recommends that all of Plaintiff's fees and costs associated with Defendant's mishandling and spoliation of ESI – beginning somewhere between November 1, 2010, and December 21, 2010 – should be assessed against Defendant as a remedial measure. He does not recommend that all time spent on ESI-related issues be billed to Defendant, as Plaintiff would presumably have incurred some costs regardless of Defendant's misconduct. Therefore, he recommends that the Court order Plaintiff to provide a detailed accounting of the fees, costs, and expenses incurred as a direct consequence of Defendant's failure to meet its discovery obligations, and that the Court require Defendant to pay the sum directly, without seeking reimbursement or indemnity from its insurer. The Special Master also recommends that the Court require Defendant to pay his fees, costs, and expenses, and he notes that the Court has already ordered as much in its order appointing him.

Finally, the Special Master recommends that the Court require Defendant to produce the entire contents of Craig Marks' laptop imaged on March 19, 2011. He recommends that the Court deem any objections on grounds of privilege or relevance to be waived, but he believes that the

7

Court should limit Plaintiff's counsel's use or disclosure of any information discovered to that which is relevant to this matter. As a safeguard, he recommends that the Court enter an order under Federal Rule of Evidence 502(d), establishing that Defendant has not waived any applicable protections or privileges in other matters.

The Special Master notes that there is no factual dispute as to Marks' misconduct. The only unknown factors are the scope of the evidence destroyed and Marks' motivation. Further, the Special Master believes that Marks' continued employment as Defendant's Manager of Legal Affairs – despite his intentional destruction of potentially relevant and responsive ESI – is tantamount to ratification of Marks' actions. The Special Master noted:

> Since my interim report, LandCoast has suggested that Mr. Marks' actions were geared only to the destruction of information connected to other litigation, but not to the instant case. I did not find this reassuring insofar as LandCoast's perception of its preservation obligations. I cannot attach any credibility to Mr. Marks' claim that, on the day I arrived to look at his computer in this litigation, he confined himself solely to destruction of ESI not related to this litigation or the subject construction project. Even if I were so naive as to accept the claim, I would question the capability to deploy the wiping tool used with such precision. It has no setting for "wipe only evidence in other matters." That LandCoast's forensic expert, Jerry Hatchett, found no remnants of data pertaining to this case in his examination of Marks laptop speaks as much to the likelihood of Marks having targeted information in this case for destruction as it does to his having studiously excluded same from his swath of spoliation.

Despite the egregious and irreversible nature of Marks' actions, the Special Master does not believe that Plaintiff will be materially prejudiced by them. He believes the more important issue is Marks' complete lack of respect for the judicial process. Further, he believes that Defendant is complicit in Marks' actions, by virtue of the fact that it employed him as their in-house counsel in all but title. Indeed, they continue to employ him, although counsel has represented that he is no longer principally responsible for responding to discovery in this matter.

Finally, the Special Master recommends that the Court impose a monetary sanction in a sum no greater than $50,000.00, with the condition that it may not be paid, reimbursed, or indemnified by any party other than Defendant. He does not believe that an adverse inference instruction as to the contents of the destroyed evidence would have a punitive impact on Defendant, as Defendant's insurer would likely bear the brunt of any resulting judgment. Further, the Special Master noted that an adverse inference instruction would have little impact here, as liability is less prominent an issue in this case than damages. Regardless, the Special Master recommends that if the Court gives such an instruction, it take the form of a rebuttable presumption.

## II. DEFENDANT'S OBJECTIONS

Of course, Defendant objects to the Special Master's report and recommendations. Each of Defendant's objections focuses primarily on the proportionality of the Special Master's recommendations and his particular recommendations as to the actions of Craig Marks. There is no dispute as to the basic facts contained in the Special Master's report and recommendations. The Court will first address Defendant's objections, and then it will discuss its authority to impose sanctions under Rule 37.

### A.   *The Special Master's Recommendations Regarding Craig Marks*

Defendant argues that the Special Master's recommendations pertaining to the actions of Craig Marks are inappropriate. Defendant addresses two issues: 1) Marks' motivation; and 2) the degree of prejudice to Plaintiff, if any.

With respect to the first issue, Marks claims that his computer became infected with a virus and froze on the morning of the Special Master's visit. Therefore, he ran several programs, including Piriform CCleaner, to "clean [his] computer of whatever had infected it so [he] could return to

work." He claims that there was no intention to delete anything on his computer other than whatever had infected his computer, and that he believed any responsive and discoverable e-mails within the scope of the Court's discovery orders were secure.

The Court finds this testimony unpersuasive. Marks has a law degree, and he is a former litigator. He knows the Rules of Civil Procedure, and he has essentially functioned as Defendant's in-house counsel throughout this matter. He guided their discovery compliance. He knew that the Special Master was scheduled to visit on the day he deleted information from his computer, and he knew that the Court had ordered the parties to cooperate with the Special Master. Finally, he knew that the Special Master had instructed the parties to preserve potentially relevant information. There is no legitimate reason why a person with the sophistication, knowledge, and experience of Craig Marks would intentionally run a program intended to permanently delete or mask information under these circumstances. *Cf. FDIC v. MAXXAM, Inc.*, 523 F.3d 566, 580-81 (5th Cir. 2008) (district court may read an ulterior motive into well-grounded filings where improper purpose was objectively ascertainable). The timing of events is simply too suspicious in light of Marks' knowledge and experience as a former attorney, and his actions can not be set aside as if they were missteps by a low-level employee. *Cf. Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033-34 (5th Cir. 1990) (expectations of heightened standard of conduct by a litigant who was also an attorney was appropriate). Regardless of whether he intended to delete relevant and discoverable information, clear a virus from his computer, or conceal other matters not related to this litigation, he knowingly defied a Court order.

With respect to the degree of prejudice to Plaintiff caused by Marks' actions, Defendant's computer expert submitted an affidavit in which he claimed that he found several "fragments of e-

10

mails previously deleted from Mr. Marks' hard drive, none of which appeared to be related to the subject scaffolding collapse or any other aspect of the subject lawsuit." However, during the hearing on June 16, 2011, the Special Master observed that Defendant's expert did not claim to have recovered *all* the data deleted by Marks. Of course, no one – except, perhaps, Marks himself – knows the full extent of what was deleted from the computer. The Court is not impressed by Defendant's assurance that the portion of data they have recovered was neither responsive nor relevant, in that there is no way to confirm that everything Marks deleted was similarly unresponsive and irrelevant. The suspicious timing of Marks' actions casts a heavy pall over Defendant's assurances.

Furthermore, the degree of prejudice caused by Marks' actions is less troubling than the cavalier attitude of which his actions are indicative. Remedying prejudice is not the sole purpose of sanctions. They also deter and punish misconduct. *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 638 (5th Cir. 2008). Nonetheless, the Court is mindful that the Special Master conceded that Marks' actions probably had little prejudicial effect on Plaintiff.

**B.   *The Proportionality of the Special Master's Proposed Sanctions***

*1.   The Relative Severity of Defendant's Conduct*

Defendant argues that the Special Master's recommendations are disproportional to its conduct in this matter. With respect to Marks' conduct, Defendant notes that Marks denies any intention to destroy evidence relating to this matter, and Defendant argues that the Special Master's recommendations are motivated by his desire to see Marks punished, rather than to see justice done. The Court has already addressed Marks' conduct above, but will briefly address it once more.

Marks is a former attorney, and he functioned as Defendant's *de facto* in-house counsel. The

suspicious timing of his actions and his knowledge and experience as a former attorney provide the Court with sufficient basis to impose sanctions on Plaintiff. *Cf. MAXXAM, Inc.*, 523 F.3d at 580-81; *Coane*, 898 F.2d at 1033-34. However, Marks' laptop – by virtue of his position as Manager of Legal Affairs and experience as a former attorney – likely contains Defendant's most confidential attorney-client communications, including discussions of settlement possibilities and his assessment of Defendant's potential exposure to liability. Even if the Court knew for certain that Marks deleted relevant and discoverable information, granting Plaintiff access to such communications would be a severe sanction. *See United States v. Phillip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (waiver of a privilege is a serious sanction, suitable for cases of unjustified delay, inexcusable conduct, and bad faith). While "[s]poliation is a serious offense and a party's intentional destruction of relevant evidence threatens the sanctity and spirit of the judicial process," *Union Pump Co. v. Centrifugal Tech., Inc.*, 404 F. App'x 899, 906 (5th Cir. 2010), the Court has no direct evidence that Marks destroyed relevant evidence, and the Special Master believes it unlikely that Marks did so.

In addition to Marks' actions, the Special Master reported the conveniently-timed theft of Dan Anderson's laptop, the unexplained disappearance of a drive image taken of Dan Anderson's laptop, and the inexplicable erasure of Tom Guidry's computer. Further, the Special Master discovered that much of the ESI sought by Plaintiffs was "readily available and principally resides in places that one would routinely look for same." While the Special Master concluded that Defendant was not "acting in bad faith to conceal the information," he believed that "they . . . exerted little effort to investigate." He "found no evidence of any corporate policy, procedure or concerted effort on LandCoast's part to preserve electronic evidence." Defendant did not issue a formal, timely litigation hold to its key personnel or IT staff. Further, it made no attempt to collect

12

or sequester data. Ball stated, "I saw no evidence that LandCoast or its counsel engaged anyone to preserve, collect or examine potentially responsive ESI until long after" they should have.

Therefore, the primary effects of Defendant's failures to comply with its ESI obligations are: 1) the tremendous expense of time and other resources that they have occasioned, and 2) the potential threat to the judicial process posed by such casual disregard for discovery obligations. While these effects are arguably not as despicable as the intentional destruction of relevant evidence, they can not be dismissed as inconsequential. After all is said and done, the parties will have easily rung up over a half million dollars in combined attorney's fees, expenses, and costs associated with this discovery dispute, and the Court will have expended far more of its resources than it should have over the production of a few documents of questionable worth.[4] No one benefits from discovery disputes such as this one except for the attorneys collecting fees.

Regardless, Defendant's gross negligence in preserving and producing ESI – combined with Marks' suspicious and inexcusable disregard for the Court's order to cooperate with the Special Master – merit sanctions, if for no other reason than to provide a lesson in what this Court expects from litigants. Accordingly, the Court orders Defendants to produce the contents of Marks' computer, with the exception of (1) those materials which are protected by attorney-client privilege; and (2) those materials which include discussion of potential settlement in this matter. The Court deems all other objections waived, including relevance and work product. Defendant shall provide a privilege log which complies with Local Rule 26(a)(1)(C). Failure to provide a privilege log which

---

[4]Defendant argues that its failure to produce the documents at issue did not prejudice Plaintiff. This argument cuts both ways. If the documents are of such little consequence, why did Defendant not comply with its discovery obligations in the first place and produce them in a timely fashion? Indeed, if the ESI in question has little to no value, Defendant has wasted the Court's time and a significant amount of money for nothing.

complies with Local Rule 26 may result in waiver of all privileges. *See Agee v. Wayne Farms, LLC*, No. 2:06-CV-268-KS-MTP, 2007 U.S. Dist. LEXIS 73396, at *14-*16 (S.D. Miss. Oct. 1, 2007); L.U.Civ.R. 26(a)(1)(C).

> 2.      *The Presence of Bad Faith*

Next, Defendant argues that its conduct does not rise to the level of bad faith or intentional destruction of ESI. Therefore, Defendant contends that the Special Master's recommended sanctions are more severe than warranted by the facts. However, it is undisputed that Craig Marks intentionally ran the CCleaner program, which deleted information from his laptop. Marks knew the program's function, as evidenced by the affidavit in which he admits he intended to delete "whatever was infecting the computer." Marks is a former attorney, and he should have known how suspicious it would look for him to run the program on the very morning that the Special Master was scheduled to visit. Further, he knew that he had an obligation to refrain from deleting *anything* from his computer, in accordance with the Court's order to cooperate with the Special Master's investigation. The Court has no hard evidence that Marks intentionally deleted relevant and discoverable evidence. However, the Court does not believe that one with the legal knowledge and experience of Marks would have committed such actions without a nefarious purpose.

Beyond the actions of Craig Marks, the Special Master also reported the conveniently timed theft of Dan Anderson's laptop, the unexplained disappearance of a drive image taken of Dan Anderson's laptop, and the inexplicable erasure of Tom Guidry's computer. If each of these events were considered in isolation, it may not be sufficient to give rise to a finding of bad faith. However, when combined with Marks' actions, the Court believes there is sufficient evidence to cast doubt on Defendant's representation of good faith.

Defendant specifically addressed the Special Master's comments regarding its failure to locate its back-up e-mail servers. Defendant argues that Robert Maw, its own IT employee, and Andrew Mozingo, the first computer specialist it hired to assist with ESI, advised that the e-mail information was irretrievable. The Court is sympathetic to Defendant's argument on this point. It would be unreasonable to expect parties to wholly dismiss the advice of purported experts retained to assist in ESI matters. However, according to the Special Master, there were multiple external hard drives connected to the e-mail server, at least one of which was titled "Backups " on the network. The undersigned is sympathetic to Defendant's alleged lack of technological savvy, but even the undersigned – who often relies upon IT staff for technological advice – knows what an external hard drive looks like and understands that there are multiple folders and/or drives which show up in the Court's main network directory. If Defendant's failure to locate the back-up e-mail information was as innocent as it argues, it was, at best, gross negligence.[5]

  3. *The Prejudice to Defendant*

Next, Defendant argues that the Special Master's recommended sanctions are disproportional to its conduct in this matter because there was little prejudice to Plaintiff. Defendant contends that neither the Special Master nor Plaintiff can identify any new, material information contained in the recently-produced ESI. First, the Court notes that Plaintiff has been prejudiced by having to fight this discovery battle in the first place. Regardless of whether the information withheld turns out to be important, Defendant admits that it should have been produced, and their failure to do so has

---

  [5]For example, if Defendant actually made an effort to comply with its ESI obligations, the server room would have been a logical place to look. If Defendant's employees actually looked in the server room, did they not wonder what was on the multiple hard drives attached to the e-mail server? Furthermore, did Defendant not take the simple step of running a search for files or folders on Defendant's network labeled "backups"?

15

forced Plaintiff to incur a substantial amount of fees and expenses. Further, Defendant's failure to comply with discovery obligations prevented Plaintiff's "timely and appropriate preparation for trial," as evidenced by the Court's imminent continuance of the trial date and re-opening of discovery. *Doe v. Am. Airlines*, 283 F. App'x 289, 292 (5th Cir. 2008).

>    4.    *Whether Defendant Has Suffered Enough Already*

Finally, Defendant argues that it has already incurred significant fees and expenses in complying with its ESI obligations. Defendant contends that these sums are tantamount to sanctions, representing that it has incurred approximately $125,000.00 in expert fees and $100,000.00 in additional legal expenses as a result of this discovery dispute. First, the Court notes that at least some of that expense would have been incurred regardless of Defendant's failure to timely comply with its ESI obligations. Second, it would simply be unjust to force Plaintiff to shoulder a portion of the Special Master's fees, as the Special Master's appointment was caused by Defendant's lack of diligence in discovery. Likewise, Plaintiff has incurred substantial fees in this discovery dispute that it would not have incurred if Defendant had timely complied with its discovery obligations. The Court's primary concern is equity, and it simply would not be equitable to force Plaintiff to shoulder the burden for expenses that would not have been incurred but for Defendant's failure to fulfill its discovery obligations. *B. F. Goodrich Tire Co. v. Lyster*, 328 F.2d 411, 416 (5th Cir.1964) (in conducting Rule 37 analysis, court held that its final responsibility was to see justice done between parties).

### III. THE COURT'S AUTHORITY TO IMPOSE SANCTIONS

Under Rule 37, the Court may impose "just" sanctions, including the payment of reasonable expenses, including attorney's fees, caused by a party's failure to comply with discovery orders.

FED. R. CIV. P. 37(b)(2); *see also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). "Although sanctions under the Court's inherent power require a finding of bad faith, sanctions under Rule 37 do not." *Sample v. Miles*, 239 F. App'x 14, 21 n. 20 (5th Cir. 2007) (punctuation omitted). Even negligent failures to comply with discovery orders fall within Rule 37's ambit. *Coane*, 898 F.2d at 1032. Further, parties violating Rule 37 who possess sufficient legal experience to understand discovery obligations should bear the costs of their non-compliance. *Id.* (attorney who understood discovery obligations should alone bear the cost of his "cavalier attitude" toward discovery). "In final analysis, a court has a responsibility to do justice between man and man . . . ." *B. F. Goodrich Tire Co.*, 328 F.2d at 416 (conducting Rule 37 analysis).

Defendant clearly violated Rule 37. It failed to produce relevant ESI in a timely fashion, and it later deleted potentially relevant ESI in direct violation of a Court order to cooperate with the Special Master. While Defendant have made admirable strides in complying with its discovery obligations in a relatively short period of time, its failure to comply months ago caused both parties to incur substantial expense. Furthermore, its discovery failures caused the Court to expend an inordinate amount of time adjudicating a discovery matter – to the point that the trial date will be continued. Therefore, it is only just that Defendant bear the costs of its actions: the Special Master's fee's and expenses, and Defendant's fees and expenses caused by Plaintiff's discovery failures.

Accordingly, the Court adopts the recommendation of the Special Master and orders that Defendant shall reimburse Plaintiff for the fees, costs, and expenses it has incurred due to Defendant's failure to timely produce relevant and responsive ESI. Plaintiff shall file a detailed accounting of its fees and expenses incurred as a direct consequence of Defendant's failure to meet its e-discovery obligations since November 1, 2010 – including, but not necessarily limited to, fees

and expenses incurred in pursuing motions to compel and sanctions. Plaintiff shall not include fees and expenses it would have incurred regardless of Defendant's failure to timely comply. *Tollett*, 285 F.3d at 368. Defendant then has two weeks to file a response to the accounting and assert any objections thereto. Plaintiff shall then have one week to file a rebuttal. After reviewing the parties' briefs, the Court will enter an award. To the extent Plaintiff incurs additional expenses as this case moves forward which were caused by Defendant's failure to timely comply with its discovery obligations (such as expenses incurred in re-deposing certain individuals), Plaintiff may seek reimbursement for such matters by motion on a later date.

Finally, the Court orders that all monetary sanctions imposed by this Order shall be paid directly by Defendant, and it shall not seek indemnification from its insurer. Other district courts have entered similar orders. *See Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05 Civ. 4837, 2006 WL 1409413, at *9 (S.D.N.Y. May 23, 2006) (party was required to pay discovery sanctions without seeking indemnification from its insurer); *Ass. Radio Serv. Co. v. Page Airways, Inc.*, 73 F.R.D. 633, 636 (N.D. Tex. 1977) (court required attorney to pay sanctions for discovery violations without reimbursement from client). Further, Rule 37 allows the Court to enter any just order when a party fails to obey a discovery order. FED. R. CIV. P. 37(b)(2)(A). There is no Fifth Circuit case which directly addresses whether a district court may impose monetary sanctions under Rule 37 with a stipulation that the sanctioned party not be indemnified by its insurer. However, the Fifth Circuit has affirmed a district court's imposition of monetary sanctions on an attorney under Rule 11 with a stipulation that the attorney may not seek reimbursement from his client or employer. *See Chilcutt v. United States*, 4 F.3d 1313, 1326 (5th Cir. 1993).

Defendant seeks to distinguish *Chilcutt* by arguing that the present case involves discovery

18

violations by a corporate party, rather than an experienced attorney. The Court finds this argument unpersuasive. As noted above, Defendant's Manager of Legal Affairs is a former litigator, and he functioned as Defendant's *de facto* in-house counsel. Defendant is not an unsophisticated party, inexperienced in navigating procedural rules and discovery obligations. Next, Defendant argues that its actions were not intentional acts designed to adversely affect Plaintiff's claims, but rather were the result of a "careless and callous attitude toward discovery." There is no dispute that Marks intentionally deleted information from his computer in direct violation of the Court's order for the parties to cooperate with the Special Master's investigation. Regardless, Defendant's efforts in complying with its ESI obligations before the Court appointed a Special Master were so minuscule that they could be fairly characterized as abandonment of the ESI process. Indeed, the Special Master used the word "callous" to describe Defendant's ESI efforts, implying an intentional disregard for discovery obligations. Therefore, the Court is unpersuaded by Defendant's attempt to distinguish *Chilcutt* on this ground.

In light of Marks' position as *de facto* in-house counsel for Defendant, his litigation experience, the highly suspicious timing of his deletion of data, Defendant's overall disregard for its ESI obligations prior to the Court's appointment of the Special Master, and the amount of time and money that has been expended due to Defendant's undisputed discovery violations, the Court believes that the Special Master's proposed payment limitation is appropriate. If corporate parties believe that they will be indemnified by their liability insurer for sanctions imposed due to misconduct in litigation, the punishment necessarily loses some of its sting. The Court's primary purpose in imposing sanctions here is to ensure that the party responsible for this discovery dispute bears the resulting costs. *B. F. Goodrich Tire Co.*, 328 F.2d at 416. A secondary – but no less

important – purpose in imposing sanctions is to deter such conduct in the future, whether by the present parties or any others that appear before the Court. *Fleming & Assocs.*, 529 F.3d at 638.

### IV. THE COURT'S CONCLUSIONS

For all the reasons stated above, the Court adopts the factual findings of the Special Master, as outlined in his interim status report [372] and final report and recommendations [373], and it adopts in part his final recommendations. Specifically:

- With respect to Plaintiff's attorney's fees and costs, the Court adopts the recommendation of the Special Master. Within seven days of the entry of this order, Plaintiff shall file a detailed accounting of its fees and expenses incurred as a direct consequence of Defendant's failure to meet its e-discovery obligations since November 1, 2010. Plaintiff shall not include fees and expenses it would have incurred regardless of the timeliness of the ESI's production. Defendant then has two weeks to file a response to the accounting and assert any objections thereto. Plaintiff shall then have one week to file a rebuttal. After reviewing the parties' briefs, the Court will enter an award. To the extent Plaintiff incurs further fees and expenses as this matter moves forward, they may seek reimbursement by motion at a later date.

- With respect to the Special Master's fees and costs, the Court adopts the recommendation of the Special Master. Defendant shall bear the fees, costs, and expenses of the Special Master.

- With respect to the information contained on Craig Marks' laptop, the Court adopts in part the recommendations of the Special Master. The Court holds that Defendant has waived all objections to the production of the laptop's contents, with the exception of (1) attorney-client privilege, and (2) any documents containing discussion of settlement in this matter. Defendant shall produce the laptop's contents which were secured on March 19, 2011. Any contents redacted must be documented in a privilege log which complies with Local Rule 26(a)(1)(C). Failure to provide a sufficient privilege log may result in waiver of all objections. Plaintiff's counsel may not use or disclose any content produced which is unrelated to the present lawsuit, and the Court orders that, pursuant to Federal Rule of Evidence 502(d), Defendant has not waived any objections in other proceedings by producing the laptop's contents in this case.

- The Court declines to adopt the recommendation of the Special Master with

20

respect to monetary sanctions beyond the Special Master's fees and costs and Plaintiff's fees and costs incurred due to Defendant's failure to comply with its discovery obligations.

- With respect to an adverse inference instruction, the Court adopts the recommendation of the Special Master and declines to impose any such instruction.

- The Court grants in part and denies in part Plaintiff's Motion for Sanctions [258]. To the extent Plaintiff's Motion for Sanctions seeks any of the relief granted in this order, it is granted. To the extent it seeks any relief not granted in this order, it is denied.

- With respect to the scheduling order, the Court adopts the Special Master's recommendations. Discovery shall be re-opened on a limited basis, and the trial of this case shall be continued from its current setting for a period of no more than ninety days. The Court understands that the Magistrate Judge has already conferred with the parties to discuss the appropriate scope of discovery during this extended period. Therefore, the Court will leave the matter of addressing Plaintiff's Motion to Amend the Case Management Order [340] to the Magistrate Judge, within the time limitation imposed by this order. Counsel shall contact the chambers of the Magistrate Judge within three days of the entry of this order to schedule a teleconference regarding the new scheduling deadlines and the scope of discovery moving forward.

- Defendant shall pay all of the above monetary sanctions themselves. They shall not seek indemnification or reimbursement from their insurance company.

SO ORDERED AND ADJUDGED this 7th day of July, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE